803 So.2d 880 (2002)
Donnie YOUNG, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-1791.
District Court of Appeal of Florida, Fifth District.
January 4, 2002.
*881 James B. Gibson, Public Defender, and Barbara C. Davis, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Robert E. Bodnar, Jr., Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Donnie Young appeals the trial court's denial of his motion to suppress cocaine that was discovered in his vehicle following his arrest. Young argues that 1) the stop of his vehicle was not a consensual encounter because the officer used his patrol car to block his parked car and then activated the patrol car's emergency lights, and 2) the officer did not have a reasonable suspicion that criminal activity was afoot to conduct an investigatory stop. Thus he contends that his motion should have been granted. We agree and reverse.

The Facts
While on routine patrol at approximately 12:25 a.m., the arresting officer witnessed a vehicle driven by Young pull into a driveway of a government apartment complex that was under construction. The officer passed Young's parked vehicle and, knowing "the apartment was under construction and nobody should be there," turned his patrol car around, pulled behind Young's vehiclethereby blocking the driveway's exitand activated his emergency lights. Although the officer's suspicions were aroused when Young pulled into the unfinished apartment complex, the officer testified he did not believe that such conduct was illegal.
As the officer positioned his patrol car, Young exited, proceeded to the front of his vehicle and raised the hood. Young appeared a little nervous, but not intoxicated, when he exited his vehicle. The officer approached and asked Young if he was having car problems. Young responded that he was "checking the gas cap." Upon further inquiry, Young repeated that he was checking the gas cap. Because of the absurd answer, the officer asked Young for his identification. A check revealed that Young's driving privileges were currently suspended and that they had been suspended on ten previous occasions. Young was arrested and a K-9 drug unit was summoned. The K-9 alerted on the front of Young's vehicle, and a subsequent search revealed a bag containing cocaine next to the radiator cap.
Young was charged with possession of cocaine and felony driving while his license was suspended. He filed a motion to suppress, arguing that the cocaine was "tainted fruit of the poisonous tree" because it was obtained during an illegal detention. The trial court denied Young's motion, concluding that the encounter between the officer and Young was a consensual encounter and that the officer did not have to have a founded suspicion to approach him and ask questions. Thereafter, Young entered a plea of nolo contendere while reserving his right to appeal.
As we noted in McMaster v. State, 780 So.2d 1026 (Fla. 5th DCA 2001), there are three levels of encounters that law enforcement may have with citizens: 1) a consensual encounter; 2) an investigatory stop; and 3) an arrest supported by probable cause that a crime has been or is being committed. The instant case implicates the first two because the trial court found that the officer engaged in a consensual encounter with Young; but the State, implicitly conceding error by the trial court, *882 argues only that the officer engaged in an investigatory stop.

Standard of Review
Mixed questions of law and fact are often involved in appellate review of a trial court's ruling on a motion to suppress. State v. Kindle, 782 So.2d 971 (Fla. 5th DCA 2001). The standard of review to be applied to the factual findings of the trial court is whether competent, substantial evidence supports the findings. See Hines v. State, 737 So.2d 1182 (Fla. 1st DCA 1999). In applying that standard to the facts, this court must construe all the evidence, and reasonable inferences therefrom, in a manner most favorable to upholding the trial court's decision. See Kindle, 782 So.2d at 973 (citing San Martin v. State, 717 So.2d 462, 469 (Fla.1998), cert. denied, 526 U.S. 1071, 119 S.Ct. 1468, 143 L.Ed.2d 553 (1999)). The trial court's application of the law to the facts, however, is reviewed de novo. Connor v. State, 803 So.2d 598 (Fla. 2001); McMaster. We must determine, based on this standard of review, whether the State has established that either a consensual encounter or an investigatory stop took place that led to the discovery of the evidence which formed the basis of the charges against Young.

Consensual Encounter
"[A] significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquiries, and the person may not be detained without a well-founded and articulable suspicion of criminal activity." Popple v. State, 626 So.2d 185, 187-88 (Fla.1993) (citing State v. Simons, 549 So.2d 785 (Fla. 2d DCA 1989)). Young argues the officer's use of his patrol car in a blocking manner and subsequent activation of the patrol car's emergency lights resulted in a show of authority that would cause any reasonable person to believe he or she was not free to leave. We agree.
Florida courts consistently agree that an officer's use of his or her emergency lights evidences an investigatory stop rather than a consensual encounter. See, e.g., Siplin v. State, 795 So.2d 1010 (Fla. 2d DCA 2001); Hrezo v. State, 780 So.2d 194 (Fla. 2d DCA 2001); Brooks v. State, 745 So.2d 1113 (Fla. 1st DCA 1999). The reason such encounters are investigatory stops rather than consensual encounters is the use of the emergency lights leads the citizen to believe that he or she is no longer free to leave. Id. Moreover, for the same reason, positioning a patrol car to obstruct the path of the vehicle once it is stopped elevates the encounter into an investigatory stop. See Griffin v. State, 800 So.2d 345 (Fla. 4th DCA 2001); Cowart v. State, 635 So.2d 1063 (Fla. 2d DCA 1994); see also Palmer v. State, 625 So.2d 1303 (Fla. 1st DCA 1993).
We find Hrezo factually similar to the instant case. In Hrezo, a deputy sheriff parked his patrol car behind the defendant's vehicle, which was parked in a public park away from the main parking area where there were no other people or vehicles. Before the deputy exited his patrol car, he activated its emergency and take-down lights. The deputy explained that he triggered the lights for his own safety and so he could see inside the vehicle.
When the deputy approached the vehicle, he requested the defendant's identification. At the same time, the deputy shined his flashlight on the interior of the defendant's vehicle and saw the end of a clear glass tube protruding from numerous papers on the console between the two front seats. Recognizing the tube as a glass narcotics pipe, the deputy ordered the defendant out of the vehicle, handcuffed him, and arrested him for possession *883 of drug paraphernalia. A subsequent search of the defendant and his vehicle produced cocaine and additional paraphernalia.
The defendant filed a motion to suppress the evidence. After hearing the evidence, the trial court entered an order denying the motion to suppress, ruling that the initial encounter was a consensual police-citizen encounter and that when the deputy inadvertently saw the crack pipe in plain view and recognized it as drug paraphernalia, he had probable cause to arrest the defendant. On appeal, the court disagreed and reversed, concluding that
[w]hen a police officer turns on his or her emergency and takedown lights under these circumstances, a reasonable person would expect to be stopped, at a minimum, for a traffic infraction and perhaps for the crime of fleeing and eluding if he or she drove away. See § 316.126, Fla. Stat. (1999); State v. McCune, 772 So.2d 596 (Fla. 5th DCA 2000). Accordingly, the use of such lights is typically regarded as an act that initiates an investigatory stop. See Brooks v. State, 745 So.2d 1113, 1113-14 (Fla. 1st DCA 1999).
Hrezo, 780 So.2d at 195-96 (footnote omitted).
Like the deputy in Hrezo, the officer in the instant case approached Young's vehicle, blocked it from the rear and then activated the patrol car's emergency lights. Under these circumstances, a reasonable person would not feel free to leave. Therefore, the consensual encounter was elevated into an investigatory stop and we must next determine whether the officer had reasonable suspicion of criminal activity to engage in such an encounter.

Investigatory Stop
To conduct an investigatory stop, commonly referred to as a Terry stop,[1] the police officer must have a reasonable suspicion that the temporarily detained person has committed, is committing, or is about to commit a crime. § 901.151, Fla. Stat. (1999); Popple; McMaster. Thus mere suspicion is not enough to support the stop: it must be well-founded and articulable. Id. In Hrezo, the court further held that the deputy did not have authority to conduct an investigatory stop because "the deputy lacked a well-founded suspicion that Mr. Hrezo had committed or was about to commit a crime when he turned on his emergency lights" and, therefore, the seized drugs and paraphernalia "were the fruit of an unlawful stop." 780 So.2d at 196.
Similarly, in Baker v. State, 754 So.2d 154 (Fla. 5th DCA 2000), an officer observed the defendant seated in a van parked outside a closed business at three o'clock in the morning. The officer pulled in behind the van with his blue lights on, at which time the defendant exited the van, checked under the hood and attempted to leave. He stopped upon hearing the officer activate the siren, and the van was subsequently searched. Finding that the officer did not have a well-founded suspicion to make the stop, this court reversed the denial of the defendant's motion to suppress, noting that "[i]f Baker's actions are sufficient to warrant a Terry stop, then anyone who parks in a business area late at night would be subject to a Terry stop." Id. at 155.
In the instant case, the only basis for the stop was the fact that Young entered the unfinished apartment complex and parked his vehicle. Such activity does not establish the requisite reasonable suspicion *884 for an investigatory stop. Moreover, the officer testified that he did not suspect Young of criminal activity, and the trial court found that the officer did not have the requisite suspicion to conduct an investigatory stop.

Conclusion
We conclude that the consensual encounter was elevated into an investigatory stop and that the officer was without a well-founded suspicion that Young had committed or was about to commit a crime. Therefore, Young's arrest was unlawful and the search incident to that arrest was invalid. Thus the evidence discovered from that search must be suppressed. See Fournier v. State, 731 So.2d 75 (Fla. 2d DCA 1999). Accordingly, we reverse Young's conviction and sentence.
REVERSED.
HARRIS and PALMER, JJ., concur.
NOTES
[1] See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).