816 So.2d 132 (2002)
Manuel MIRANDA, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-1459.
District Court of Appeal of Florida, Fourth District.
March 27, 2002.
Rehearing Denied April 22, 2002.
*133 Carey Haughwout, Public Defender, and Nan Ellen Foley, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Barbara A. Zappi, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Appellant was charged with possession of cocaine, possession of heroin, and possession of drug paraphernalia. He pled no contest to the charges, reserving the right to appeal the denial of his motion to suppress. We reverse.
At approximately 5:00 A.M. on August 10, 2000, Broward Sheriff's Office Deputy Sandra Shofner noticed a black 1996 Civic parked in an apartment complex's parking lot. The car was legally parked near the back, with the motor turned off and the driver's window partially rolled down. The car attracted the deputy's attention because she did not recognize it. Further, she knew that the residents there did not "hang out" in their vehicles with the windows rolled down, because of crime in the area.[1]
As the deputy approached the car, she saw appellant reclining in the driver's seat with his hands on his lap. His hands were in the shape of fists, with palms down. The deputy knocked on the window and asked appellant for his name, identification, and reason for being there. Appellant sat up and reached toward the glove box on the passenger side of the vehicle *134 for some identification. He could not reach all the way to the glove compartment with his right hand, so he hesitated and "came back with his right hand and then produced ID with his left hand." After producing his identification, appellant put his left hand down by his side and leaned forward in the car feeling around. The deputy could not see what appellant was doing with his hands because the windows were tinted. However, she noticed an object in his right hand that she could not identify. Because she did not know whether the object was a weapon, she became concerned for her safety and ordered appellant out of the car.
Appellant agreed to step out of his car. However, because he was still reaching down as he was getting out, the deputy opened the driver's side door. She then saw appellant pause and reach forward with his right hand in the area of his right knee. When appellant stepped out the vehicle, the deputy saw that he no longer had an object in his right hand. She saw that he had dropped the object near the right side of the driver's seat, just left of the console. The object, later recovered, was a cut straw, commonly used to inhale cocaine. Rolled up inside the straw was a small plastic baggie, which tested positive for the presence of heroin.
The deputy acknowledged that when she first approached the car, she had not observed appellant engaged in any criminal activity nor received any complaints. Further, appellant had not committed any traffic violations and was lawfully parked in the parking lot. On cross-examination, the deputy recalled that BSO did not have authority from the property owners to issue trespass warnings on the property. In response to questioning by the state concerning the consensual nature of the encounter, the deputy testified that when she initially stopped appellant, he was free to roll up his window and drive away. However, she conceded, on questioning by the court, that she would have pursued her investigation because the circumstances appeared suspicious to her.
Appellant testified at the suppression hearing. He said that he had fallen asleep in his car while waiting for a friend to return home. He had been sleeping for five or six hours before he was awakened by the deputy. According to appellant, the deputy tapped very loudly on his window with her flashlight and told him to step out of the vehicle. He responded that if there was a problem with his being there he would leave. The officer said, "no," and again asked him to get out of the car.
The trial court denied appellant's motion to suppress. It first determined that the initial contact between appellant and the deputy was a consensual police-citizen encounter. The court then ruled that the deputy's conduct in ordering appellant out of his legally parked car amounted to an investigatory stop. Based on the totality of the circumstances, the court ruled that the investigatory stop was justified. These circumstances were the time of day, prior criminal activity in the area, the car's tinted windows, and appellant's suspicious hand movements when producing identification.
Orders denying the suppression of evidence on Fourth Amendment grounds are reviewed de novo. Ornelas v. United States, 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). While we defer to the trial court's factual findings in our review, we independently determine whether those facts, as a matter of law, amount to a reasonable suspicion or probable cause. Harris v. State, 761 So.2d 1186, 1187 (Fla. 4th DCA 2000).
In Popple v. State, 626 So.2d 185 (Fla. 1993), the Florida Supreme Court held that a police officer may approach a citizen in a parked car to ask questions without a founded suspicion of criminal activity, but *135 that he cannot order a citizen out that car absent reasonable suspicion that a crime has occurred, is occurring, or is about to occur. In distinguishing between the different levels of police-citizen encounters, the supreme court characterized an order to exit a vehicle as a "seizure," requiring a well-founded articulable suspicion of criminal activity. The supreme court found that the officer in Popple did not have reasonable suspicion to order the defendant to exit his vehicle where the officer merely observed the defendant sitting in a legally parked car and making furtive movements.
In this case, the trial court correctly determined that when Deputy Shofner approached appellant's parked car, this initial contact was a consensual police-citizen encounter. The court also correctly concluded that when the deputy ordered appellant out of his car, appellant was seized, and that a reasonable suspicion of criminal activity was required for such seizure. We disagree, however, with the trial court's ultimate determination that the circumstances described by the deputy gave rise to a reasonable suspicion of criminal activity. As in Popple, the deputy herein did not testify about facts or circumstances sufficient to give her a well-founded, articulable suspicion of criminal activity. Other than furtive movements, the only additional circumstances described by the deputy were the time of day, past criminal activity in the area, and the fact that appellant's windows were partially rolled down.
In Ippolito v. State, 789 So.2d 423 (Fla. 4th DCA 2001), we held that the officer lacked a well-founded suspicion of criminal activity to justify ordering the defendant out of his legally parked vehicle, merely because it was late at night, the defendant was parked in a gas station in an area of past criminal activity, and the officer believed the defendant was untruthful about his purpose for being there. Similarly, in Currens v. State, 363 So.2d 1116 (Fla. 4th DCA 1978), we held that the officer did not have sufficient reason for ordering the defendant to leave his car, where the officer observed the defendant at 1:30 a.m. in a sports car, legally parked, with the windows closed and engine off, and after seeing no unusual activity, the officer approached the defendant and noticed the defendant make a quick motion with his hand between his legs. We noted that "there was no indication that appellant was involved in any criminal activity, nor was there any reason to believe that the safety of the officer or the public was endangered." Id. at 1117.
In Bowen v. State, 685 So.2d 942 (Fla. 5th DCA 1996), at approximately 1:20 A.M., a policeman passed through the parking lot of a Red Roof Inn. Although there had been earlier robberies and burglaries at the motel, none had been reported that evening. The officer became suspicious when he saw two people in a legally-parked vehicle, with its brake lights on and headlights off. Because the older model vehicle had a local tag and did not appear to be a rental car, the officer suspected that the vehicle did not belong to one of the motel's guests. After observing the car's occupants fidgeting back and forth in the car and looking up and down, the officer approached the vehicle and announced that he was a police officer. Startled, the occupants leaned forward to put something on the floorboard. The officer believed they were trying to hide something, so he ordered them out of the vehicle. As the defendant exited from the passenger side, he dropped a straw with white power on it. He was later charged with possession of cocaine. The Fifth District Court of Appeal reversed the order denying the defendant's motion to suppress, concluding that the officer lacked reasonable suspicion of criminal activity required to order the defendant to exit his parked vehicle.
*136 In United States v. Arvizu, 534 U.S. 266, ___, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002), the United States Supreme Court recently reiterated that, in making reasonable-suspicion determinations, reviewing courts must look at the "totality of the circumstances" of each case in deciding whether the detaining officer has a "particularized and objective basis" for suspecting criminal activity. The factors relied upon for the detention in this case are not unlike those presented in Popple, Ippolito, Currens, and Bowen. Taken together, they do not suffice to form a particularized and objective basis for reasonable suspicion of criminal activity. Accordingly, we reverse the trial court's denial of the motion to suppress and remand this cause with directions to vacate appellant's conviction and sentence.
REVERSED and REMANDED.
SHAHOOD, J., and OWEN, WILLIAM C., Senior Judge, concur.
NOTES
[1] The deputy was familiar with the apartment complex because she used to live there and had once worked there as an off-duty security guard.