826 So.2d 399 (2002)
The STATE of Florida, Appellant,
v.
Leonard TAYLOR, Appellee.
No. 3D01-398.
District Court of Appeal of Florida, Third District.
July 24, 2002.
*400 Robert A. Butterworth, Attorney General, and Erin K. Zack, Assistant Attorney General, for appellant.
James Newton (Georgia), Special Assistant Public Defender, for appellee.
Before GODERICH and SHEVIN, JJ., and NESBITT, Senior Judge.
SHEVIN, Judge.
The State of Florida appeals an order granting defendant Leonard Taylor's motion to suppress statements and evidence. We affirm.
Taylor was charged with burglary of an occupied dwelling and grand theft. Defense counsel filed a motion to suppress evidence seized and statements made following Taylor's arrest. The motion asserted that the arrest was illegal as the officer lacked reasonable suspicion for the initial stop of defendant. After a hearing, the court granted the motion.
The following facts were developed at the suppression hearing.
Officer Patricia Malone was on routine patrol at 4:30 a.m. in Miami Lakes, an affluent, predominately white area, of northern Miami-Dade County. Officer Malone drove by a car that was legally parked on the swale. Officer Malone turned around to check out the vehicle. Upon passing the vehicle a second time, Officer Malone noticed a gentleman in the vehicle.
Officer Malone parked her patrol car and approached the gentleman. Officer Malone asked him to get out of the vehicle and step away from the car. She asked the gentleman what he was doing there. He responded that he used to live in the area. Officer Malone inquired nothing further. She asked him for identification; he produced a valid Florida driver's license.[1] The officer took the license back *401 to the patrol car to run a check on the gentleman.[2]
Officer Malone testified that the check returned a possible want and that the dispatcher was going to conduct additional investigation. At that point, the officer handcuffed the defendant and placed him in the back of the patrol car. Thereafter, Officer Malone testified that she was told there were no wants on the defendant. The defendant was not released, however. When the backup officers arrived on the scene, Officer Malone told them that she had stopped the defendant because it was unusual for him to be in the area at that hour of the morning.[3]
In direct contradiction to Officer Malone's testimony, the defense introduced the testimony of Miami-Dade Police Dispatcher Janet Bacon. Bacon has been a dispatcher for twenty years. The dispatcher testified that when an officer asks that a check be run on an individual, the dispatcher runs the check, and reports any information to the officer. If there are any possible wants, the officer is responsible for calling wants or records to verify the information.[4]
Miami-Dade Police Department Communications Bureau Records Custodian Richard Walsh testified regarding the signals Officer Malone used to call in her activities. When Officer Malone stopped to question the defendant, she called in a "signal 13" at 4:30 a.m. Walsh testified this means the officer is checking something out. Officer Rodriguez's arrival time on the scene was also 4:30 a.m., moments after Officer Malone called in the signal 13. The defendant was already handcuffed in the back of the police car. It wasn't until some time later, during the two and a half hours the call lasted, that Officer Malone called in a "signal 26," which meant that a burglary had occurred.
At the conclusion of the suppression hearing, the trial court announced:

*402 She had one of the worst memories as a police officer. The court finds that her memory was not very good in this case, and the State has the burden of proving what happened, and she guessed, because she was contradicted by some of the other officers.
Her initial testimony to the Court is she was waiting for dispatch to get back to her for ten, fifteen minutes on a possible want, and it later came out that Officer Bacon said there was a "possible want," and it would be up to the officer, and when she was called back in and I asked her, after she came back on rebuttal, whether or not she had called the dispatcher she said, "Well, maybe I did. I just don't remember."
And now she has got the information that, within the next ten, fifteen minutes, she also was very unclear as toat what point did she even suspect there was anything with the garage door?
Quite honestly, the other officers made the scene, that she didn't notice the garage door was open or anything unusual until a later time, and that they came on their own, when the officers came on their own, wanted to know whether the garage door was open.
. . .
I think it is clear that her recollection of events were such that the Court was not confident of any testimony that she gave ....
The trial court granted the suppression motion.
In reviewing an order granting a suppression motion, the trial court's factual findings will be upheld if they are supported by competent substantial evidence. Connor v. State, 803 So.2d 598, 608 (Fla. 2001), certiorari denied, ___ U.S. ___, 122 S.Ct. 2308, 152 L.Ed.2d 1063 (2002); Young v. State, 803 So.2d 880 (Fla. 5th DCA 2002). As the foregoing recitation of facts demonstrates, the court's findings, including the finding that the arresting officer was not credible, are supported by competent substantial evidence. The evidence, and all reasonable inferences therefrom, must be construed in the light most favorable to upholding the trial court's decision. Young. In determining whether the seizure was illegal, this court must make a de novo determination. Connor; Young.
There are three levels of police encounters with citizens. Each level is scrutinized under a different standard. This case presents a second-level encounter.
The second level of police-citizen encounter involves an investigatory stop as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.
Popple v. State, 626 So.2d 185, 186 (Fla. 1993) (citations omitted). We look at the totality of the circumstances to determine whether a reasonable well-founded suspicion exists to justify the investigatory stop. Saturnino-Boudet v. State, 682 So.2d 188, 191 (Fla. 3d DCA 1996).
In this case, Taylor was detained, and the consensual encounter between Malone and Taylor became a Terry stop, when the *403 officer asked Taylor to get out of and step away from the car.[5]Popple; Ippolito v. State, 789 So.2d 423 (Fla. 4th DCA 2001); Alvarez v. State, 695 So.2d 1263 (Fla. 2d DCA 1997); Bowen v. State, 685 So.2d 942 (Fla. 5th DCA 1996). However, that seizure was not supported by the requisite "well-founded, articulable suspicion of criminal activity." Popple, at 186.
This case is controlled by the holding in Popple. It is well-settled that merely observing an individual in a legally parked car is insufficient to raise a well-founded suspicion of criminal activity sufficient to support a stop.[6]Popple held that *404 a legally parked car, even one in a desolate area, does not create reasonable suspicion to justify a detention. In Popple, the police only observed the defendant sitting in a legally parked car making furtive movements at 12:55 p.m. prior to the detention. The supreme court found that Popple's suppression motion should have been granted. Under that holding, Taylor's suppression motion was properly granted.
This case is virtually indistinguishable from Miranda v. State, 816 So.2d 132 (Fla. 4th DCA 2002), Alvarez v. State, 695 So.2d 1263 (Fla. 2d DCA 1997), and the cases cited therein. In Miranda, the arresting officer observed a legally parked car in the back of an apartment complex parking lot at 5:00 a.m. in an area of prior criminal activity. The court held that this observation was insufficient to create reasonable suspicion that a crime had, or was about, to occur, and reversed the denial of a suppression motion. Here, Malone observed nothing more than the officer in Miranda.
In Alvarez, police observed the defendant seated in a legally parked car adjacent to an apartment complex at 4:00 a.m. The officers asked the defendant to exit his car based on their general suspicion that he might be committing a crime. There had been no reports of burglaries, thefts, or other criminal activity in the area that evening. In reversing the denial of Alvarez's suppression motion, the court concluded that the officers did not have reasonable suspicion to believe the defendant was committing a crime. The Alvarez scenario mirrors the events leading to Taylor's detention.
The state urges that the stop here was not infirm because Officer Malone had reasonable articulable suspicion that Taylor was involved in a robbery. However, this theory is not borne out by the record. The record unequivocally demonstrates that when Officer Malone asked the defendant to step out of his car she had only observed a legally parked car. Nothing more. This observation does not rise to the level of well-founded suspicion of criminal activity necessary to justify the stop.
The state's argument that Malone was aware of the open garage door, and that she stopped Taylor in connection with that discovery, is belied by the evidence. As a threshold matter, as we noted earlier, supra note 2, at her deposition, Malone did not testify to noticing the open garage door before stopping to investigate Taylor. This testimony was used to impeach Malone's contrary testimony at the hearing; Malone was not rehabilitated on this point. Moreover, the trial court, in its discretion, made a credibility determination and found that Malone was not credible; that finding is supported by competent substantial evidence and will not be disturbed. Stone v. State, 616 So.2d 1041 (Fla. 4th DCA 1993); Alleman v. State, 279 So.2d 382 (Fla. 3d DCA 1973). See Smiley v. Greyhound Lines, Inc., 704 So.2d 204 (Fla. 5th DCA 1998).
The additional evidence presented at the hearing belies any attempt by the state to assert that Malone was aware of the open garage door, or anything else. Malone called in an investigation code when she first stopped Taylor. She didn't alert the dispatcher to any suspicion of a burglary. Malone did not immediately handcuff Taylor or question him. Malone did not communicate any suspicion of a burglary to the backup officers, nor did she request *405 that the backup officers investigate a burglary. Had she been aware of the open garage door, and suspected Taylor of a burglary, as the state posits, she would have, at a minimum, called in the burglary signal, communicated this information to the backup officers, or informed them that she was going to investigate and follow-up on her suspicions.
Moreover, any observations beyond the point that Taylor was seized are irrelevant to a determination that the seizure was legal. The state may not rely on facts discovered or noticed after a stop to justify the stop. See Phillips v. State, 781 So.2d 477, 479 n. 1 (Fla. 3d DCA 2001)("Because the police officers did not notice that the defendant's clothing were torn and stained until after the police officers stopped the defendant, the State may not rely on these facts to justify the investigatory stop."). By the time the backup officers arrived Taylor was already in the back of the police car, handcuffed. The state may not rely on their observations to justify the stop.
Much has been made of the fact that this incident occurred at 4:30 in the morning. Yet, this fact alone does not insulate Officer Malone's stop of defendant in a legally parked vehicle from fourth amendment infirmity.[7] "It has long been recognized in this state that being out on the public street during late and unusual hours cannot constitute a valid basis to temporarily detain" a defendant. Levin v. State, 449 So.2d 288, 289 (Fla. 3d DCA 1983), approved, 452 So.2d 562 (Fla.1984); A.H. v. State, 693 So.2d 89 (Fla. 3d DCA 1997)(reversing denial of suppression motion where police observe respondent legally walking on street at 3:00 a.m.). See also Phillips, 781 So.2d at 477 (reversing denial of suppression motion where police observed defendant legally walking on street). In Levin, the defendant was stopped because he was walking between 3:00 and 3:30 a.m. in a "`high class' residential area." There were no reports of crimes in the area, nor did police observe anything more suspicious than individuals out at an unusual hour. This court found that the police officer's observations were insufficient to create a well-founded articulable suspicion of criminal activity. In this case, Malone did not testify about facts or circumstances sufficient to give her the "well-founded, articulable suspicion of criminal activity," Popple and Terry require. Malone stopped to investigate Taylor because it was unusual to see a car parked on the swale at that hour. This is nothing more that mere suspicion, and "[m]ere suspicion is not enough to support a stop." Popple, 626 So.2d at 186.[8]
Lastly, we turn to the state's eleventh-hour plain view doctrine argument. This argument fails because it was not *406 preserved for appellate review. This was addressed in State v. Cornuz, 816 So.2d 827 (Fla. 3d DCA 2002), where the state sought to present an argument, on appeal from a suppression order, that was not presented to the trial court. As Cornuz states, the Criminal Appeal Reform Act, § 924.051(1)(b), Fla. Stat. (2002), forbids consideration of an issue that is not "timely raised before, and ruled on by, the trial court, and that the issue, legal argument, or objection ... was sufficiently precise that it fairly apprized the trial court of the relief sought and the grounds therefore." An argument against suppression may not be presented for the first time on appeal. Cornuz; State v. Klein, 736 So.2d 9 (Fla. 4th DCA 1998); State v. Mae, 706 So.2d 350 (Fla. 2d DCA 1998).
The state argues that preservation should not be an issue, because the testimony demonstrates that the items were obviously in plain view. The state cites to page 66 of the record to show that the trial court was aware of the plain view argument. However, that record cite only demonstrates that the items were on the scene. Nowhere does the prosecutor mention, argue, or intimate to the trial court that the plain view doctrine might apply here, and the court was never given an opportunity to address the applicability of this argument. Moreover, to adopt the state's posture would make a mockery of the Criminal Appeal Reform Act. This argument has been waived.
When the totality of the circumstances as presented at the suppression hearing are examined, the detaining officer had no "`particularized and objective basis' for suspecting criminal activity." Miranda, 816 So.2d at 136, quoting United States v. Arvizu, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Moreover, "to sustain the State's position in this case would mean that the police could order citizens out of their automobiles under almost any circumstances." Popple, at 188 n. 1. We will not act contrary to the Florida Supreme Court precedent.
Based on the foregoing analysis, the suppression order is
Affirmed.
NOTES
[1] Officer Malone testified that the gentleman was cooperative during the entire encounter, but that he appeared nervous. The officer also testified that it was not uncommon for persons to appear nervous during encounters with the police. We note that nervousness, without more, is insufficient to establish probable cause for arrest. State v. Arnold, 475 So.2d 301 (Fla. 2d DCA 1985) (nervousness plus disheveled appearance in area where it was not uncommon for migrants to sleep in brush do not equal founded suspicion). In contrast, nervousness and evasive behavior can be pertinent factors in determining reasonable suspicion. See e.g., United States v. Brignoni-Ponce, 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); State v. Brown, 616 So.2d 124 (Fla. 2d DCA 1993); Murphy v. State, 512 So.2d 1006 (Fla. 4th DCA 1987), review denied, 520 So.2d 585 (Fla.1988) (nervousness of driver plus high drug area plus nicer car than normally seen in surroundings plus seeing person hanging into car who fled at approach of officer equals founded suspicion); State v. Bullock, 460 So.2d 517 (Fla. 3d DCA 1984) (nervousness during consensual encounter, travel under assumed name and clearly incorrect denial of possession of luggage created founded suspicion).
[2] Officer Malone's testimony at her deposition contradicted her testimony at the hearing. While at the deposition, Officer Malone stated she noticed the vehicle, turned around and went back to check out the vehicle. At the hearing she testified that the first thing she noticed was the garage door open, and thereafter noticed the vehicle. Officer Malone could offer no explanation for the inconsistency. Curiously, Officer Malone never asked the defendant any questions about the garage door or the items by the car. Except for the initial question about his presence, there was no further exchange between Malone and the defendant.
[3] Backup Officer Rodriguez noticed an open garage door across the street from the defendant's car. Officer Rodriguez also pointed out to Officer Malone that there was a lawn mower and other items by the defendant's car. However, Officer Rodriguez testified that open garage doors are not unusual.
[4] This testimony was corroborated by backup Officer Rodriguez. He explained that if a dispatcher reports a possible want, the procedure is to arrest the suspect and then the officer calls and verifies the wants. Gonzalez did not believe Officer Malone had done this.
[5] We are not persuaded that this is one of those scenarios envisioned in footnote one of Popple, "in which an officer who is put in fear of his or her safety would be justified in ordering a person out of a vehicle even in the absence of reasonable suspicion." Popple, 626 So.2d at 188, n. 1. Nothing was occurring to place the officer in fear, other than the observation of a legally parked car with an occupant. The Florida Supreme Court in Popple made clear, relying on Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), that before an officer can ask a defendant to exit his vehicle, the vehicle has to be legally detained. Popple, 626 So.2d at 187. As Popple noted, quoting Mimms, "we do not hold today that `whenever an officer has an occasion to speak with the driver of a vehicle, he may also order the driver out of the car.'" Popple, 626 So.2d at 187 (quoting Mimms, 434 U.S. at 111 n. 6, 98 S.Ct. 330). In this case, Officer Malone merely observed a legally parked vehicle, and nothing further. Officer Malone had no well-founded articulable suspicion of criminal activity, and all she was doing when she approached Taylor's car was engaging in a consensual encounter with a citizen. Ordering Taylor out of his car changed that encounter into a Terry stop. See also R.H. v. State, 671 So.2d 871, 871-2 (Fla. 3d DCA 1996)(Schwartz, J.)(officer may order a passenger out of a car that police have legally stopped). Here, the state doesn't receive the benefit of Mimms because Malone's initial stop of Taylor was unlawful.
[6] First District: State v. Holloman, 824 So.2d 901 (Fla. 1st DCA 2002)(suppression order affirmed where officers ordered defendant out of legally parked car); Harrelson v. State, 662 So.2d 400 (Fla. 1st DCA 1995)(quashing affirmance of order denying suppression motion where trooper ordered defendant out of legally parked car); Second District: Parsons v. State, 825 So.2d 406 (Fla. 2d DCA 2002)(reversing denial of suppression motion where police only observe legally parked car in parking lot at 1:40 a.m.); Hrezo v. State, 780 So.2d 194 (Fla. 2d DCA 2001)(reversing denial of suppression motion where police only observe car legally parked); Shaw v. State, 778 So.2d 389 (Fla. 2d DCA 2001)(same); Brown v. State, 744 So.2d 1149 (Fla. 2d DCA 1999)(same); Danielewicz v. State, 730 So.2d 363 (Fla. 2d DCA 1999)(reversing denial of suppression motion where police only observe car legally parked in parking lot at 1:30 a.m.); Allen v. State, 703 So.2d 1162 (Fla. 2d DCA 1997)(reversing denial of suppression motion where police only observe legally parked car in parking lot); Alvarez v. State, 695 So.2d 1263 (Fla. 2d DCA 1997)(reversing denial of suppression motion where police observe legally parked car in parking lot at 4:00 a.m.); Horton v. State, 660 So.2d 755 (Fla. 2d DCA 1995)(reversing denial of suppression motion where police only observe car legally parked); Fourth District: Miranda v. State, 816 So.2d 132 (Fla. 4th DCA 2002)(reversing denial of suppression motion where police observe legally parked car in parking lot at 5:00 a.m.); Ippolito v. State, 789 So.2d 423 (Fla. 4th DCA 2001)(reversing denial of suppression motion where police observe legally parked car at gas station at 3:00 a.m.); Currens v. State, 363 So.2d 1116 (Fla. 4th DCA 1978)(reversing denial of suppression motion where police observe legally parked car in parking lot at 1:40 a.m.); Fifth District: Young v. State, 803 So.2d 880 (Fla. 5th DCA 2002)(reversing denial of suppression motion where police only observe car drive into parking lot and legally park at 12:25 a.m.); Baker v. State, 754 So.2d 154 (Fla. 5th DCA 2000)(reversing denial of suppression motion because police only observe legally parked van at 3:00 a.m.); Bowen v. State, 685 So.2d 942 (Fla. 5th DCA 1996)(reversing denial of suppression motion where police observe legally parked car in parking lot at 1:20 a.m.). Compare Mendez v. State, 678 So.2d 388 (Fla. 4th DCA 1996)(affirming denial of suppression motion where car was observed illegally stopped in middle of street); J.E. v. State, 731 So.2d 788 (Fla. 5th DCA 1999)(affirming denial of suppression motion where car observed in park closed to cars without boats); State v. Roux, 702 So.2d 240 (Fla. 5th DCA 1997)(reversing suppression because, although police could not detain defendant based solely on observing defendant in legally parked car, defendant exited vehicle and committed battery on a law enforcement officer).
[7] Parsons, 825 So.2d 406 (reversing denial of suppression motion for lack of well-founded reasonable suspicion where police only observe legally parked car in parking lot at 1:40 a.m.); Danielewicz, 730 So.2d 363 (same at 1:30 a.m.); Alvarez, 695 So.2d 1263 (same at 4:00 a.m.); Miranda, 816 So.2d 132 (same at 5:00 a.m.); Ippolito, 789 So.2d 423 (same at 3:00 a.m.); Currens, 363 So.2d 1116 (same at 1:40 a.m.); Young, 803 So.2d 880 (same at 12:25 a.m.); Baker, 754 So.2d 154 (same 3:00 a.m.); Bowen, 685 So.2d 942 (same at 1:20 a.m.).
[8] It must be noted that this case does not involve an officer responding to a call about suspicious or criminal activity, that, when coupled with the officer's observations, could create the requisite degree of reasonable suspicion to justify the investigatory stop. See Lightbourne v. State, 438 So.2d 380, 387 (Fla. 1983)(no unlawful intrusion when police are not acting on hunch or on roving patrol but rather responding to call to investigate suspicious car); Hernandez v. State, 784 So.2d 1124 (Fla. 3d DCA 1999)(dispatch call of suspicious activity at 3:00 a.m. in parking lot and observing two vans parked back-to-back, with rear doors open, sufficient to create reasonable suspicion); State v. Clark, 721 So.2d 1202 (Fla. 3d DCA 1998)(police had reasonable suspicion to stop person within five blocks of burglary reported ten minutes earlier when person matched appearance given by victim); State v. Russell, 659 So.2d 465 (Fla. 3d DCA 1995)(officer had well-founded reasonable suspicion to believe defendant observed with sack containing squared-off items appearing to be appliances during surveillance of very sensitive high burglary area had committed an offense); State v. Bell, 382 So.2d 119 (Fla. 3d DCA 1980)(officer had articulable founded suspicion to stop defendant who fled when found peering into first floor window of apartment from alley in high crime area).