KLINGENSMITH, J.
The Defendant, Robert Eric Santiago, appeals from the trial court’s denial of his motion to suppress, and the court’s failure to adhere to its oral pronouncement issued at the conclusion of his violation of probation hearing. We agree with Defendant on both issues, and reverse.
Defendant pled guilty to robbery and was given a sentence that included probation. Under the terms of his probation, Defendant was ordered to comply with Florida’s standard conditions of supervision that included a requirement that he report to his probation officer every month. He was also informed that while on probation he could not violate any law, use intoxicants in excess, or use drugs or narcotics unless prescribed. The instant case arises from Defendant’s purported violations of those conditions.
One month later, a police officer made a traffic stop on the car Defendant was driving after the officer smelled marijuana emanating from the vehicle. Another officer who responded to the scene after the stop believed Defendant was impaired and ordered him to perform field sobriety tests. When Defendant refused to take a breathalyzer, he was arrested for DUI and for driving without a valid driver’s license.
Three days after the DUI arrest, police received an anonymous phone call about a car parked at the end of a dead end street at 2:00 a.m. with its headlights periodically flashing on and off. When officers arrived at the location, they found Defendant and a female passenger inside the vehicle. The keys were in the ignition so music could play, but the engine was not running. One officer detected the odor of alcohol on Defendant’s breath. Defendant stated he had consumed a couple beers, but he was not driving. When asked about his presence at that location, he gave the officers a vague explanation. Defendant was ordered to step out of the car, and when he did, a small plastic bag containing cocaine dropped from his lap onto the ground. The officers then searched the car and located a short plastic straw that they deemed to be drug paraphernalia. The female passenger, who owned the vehicle, told the officers that both the cocaine and paraphernalia belonged to Defendant. Defendant was arrested for possession of cocaine and drug paraphernalia.
The State subsequently charged Defendant with six violations of probation for committing a DUI, operating a motor vehicle without a valid license, possessing cocaine, possessing drug paraphernalia, failing to report to his probation officer, and changing his residence without the consent of his probation officer.
Defense counsel filed a motion to suppress both the cocaine and paraphernalia, claiming these items were obtained during the course of an unlawful detention. The motion argued that the initial report to dispatch came from an anonymous caller bereft of any facts that insinuated criminal activity was afoot. Further, it was alleged there was no legal justification for an investigatory stop because the officer merely smelled alcohol on Defendant’s breath with no indicia of intoxication. Counsel also argued this was not a consensual encounter because Defendant could not have objectively believed he was free to leave since the officers positioned themselves on both sides of the vehicle. The State responded that the officers were engaged in a consensual encounter with Defendant, and could reasonably detain him for further investigation because he was observed *1163 in the driver’s seat, smelling of alcohol, with keys in the car’s ignition.
The trial court denied the motion to suppress, finding that the interaction was consensual, and that had Defendant’s car been moving, the police would not have had reasonable cause to make a stop. The court also concluded that the officers had a reasonable basis to temporarily detain Defendant by ordering him out of the car for further investigation and officer safety based on the lateness of the hour, the suspiciousness of Defendant’s explanation for being there, and the odor of alcohol.
At the violation of probation hearing, Defendant conceded that he had failed to report to his probation officer as instructed. On the other alleged violations, his counsel argued that the arresting officer for the DUI charge did not see Defendant driving and could not verify that he was behind the wheel of the car. As a result, the DUI charge was never filed, and the driving with a suspended license charge was nolle prossed. Counsel also argued there was no evidence to suggest that the straw discovered during the vehicle search incident to the cocaine arrest was illegal paraphernalia, because it was never tested for drug residue. As for the allegation of cocaine possession, the defense argued that there were two people in the car and the cocaine could have belonged to his female passenger. Finally, as to Defendant’s alleged violation for an unauthorized change of residence, Defendant’s mother testified that he never moved from her house.
The trial court orally announced its finding that Defendant violated his probation by failing to report for supervision, possessing cocaine, and operating a motor vehicle with a revoked license. Defendant was sentenced to ten years in prison with credit for time served. Although the court orally pronounced Defendant guilty of only three counts from the affidavit, the subsequent written order of probation revocation found that Defendant violated all six conditions. This appeal followed.
The two issues presented are: 1) whether the trial court erred by denying Defendant’s motion to suppress; and 2) whether the trial court’s written order of probation revocation failed to conform to its oral pronouncement.
As the trial court correctly noted, a police officer may approach a citizen to ask questions without a founded suspicion of criminal activity. Thus, the interaction between the Defendant and the officers on the dead end street began as a consensual encounter. Popple v. State, 626 So.2d 185, 187 (Fla.1993). However, in distinguishing between different levels of police-citizen encounters, the Florida Supreme Court in Popple characterized an order to exit a vehicle as a “seizure,” thus converting the consensual encounter into a detention that required a well-founded ar-ticulable suspicion of criminal activity. Id. at 187-88.
In making reasonable-suspicion determinations, appellate courts must look at the “totality of the circumstances” in each case to determine whether the detaining officer has a “particularized and objective basis” for suspecting criminal activity. See United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); see also State v. Gonzalez, 840 So.2d 401, 403 (Fla. 4th DCA 2003). In the instant case, the trial court pointed to three factors which it believed established the officer’s reasonable suspicion of criminal activity: the suspiciousness of Defendant’s explanation for being at that location, officer safety, and “perhaps” the alcohol and driving. However, the record before us does not support the court’s conclusion that those factors created reasonable sus *1164 picion to justify an investigatory stop of Defendant.
First, the court noted that Defendant’s explanation that he and the female passenger were just “hanging out” seemed “a little suspicious.” But, a mere suspicion or hunch is not enough to justify temporary detention. As Florida courts have explained, “the officer must be able to articulate the supporting facts, and the suspicion must be well-founded” to support an investigatory stop. Faunce v. State, 884 So.2d 504, 506 (Fla. 1st DCA 2004) (citing Love v. State, 706 So.2d 923, 924 (Fla. 2d DCA 1998)). In a similar case decided by this court, Miranda v. State, 816 So.2d 132, 133 (Fla. 4th DCA 2002), the defendant was observed inside a legally parked car, with the engine off and windows partially rolled down. The officer testified that she knew the car did not belong there, the area was high in crime, and area residents did not “hang out” in their vehicles with the windows rolled down. Id. When the officer became suspicious and approached the car, the defendant was seen making furtive movements while holding an object in his hand that she could not identify. Id. Because she did not know whether the object was a weapon, she ordered the defendant out of the car for her safety. Id. at 134. As he was getting out of the vehicle, the officer discovered contraband. Id. Given those facts, this court reversed the trial court’s denial of the defendant’s motion to suppress, holding that the circumstances described did not give rise to a well-founded, articulable suspicion of criminal activity required for an investigatory stop. Id. at 135.
In the instant case, in addition to his statement to the officers that he was simply “hanging out,” Defendant also told them that he lived nearby and pointed to his residence “somewhere towards the middle of the street.” The testimony also showed that the Defendant was observed listening to music in his car along with the female passenger when the officers arrived on scene. No other facts were presented at the hearing to support a well-founded suspicion that Defendant was not “just hanging out,” nor did the trial court elaborate on why it found Defendant’s explanation suspicious. Viewed in their entirety, these facts are insufficient to form a particularized and objective basis for reasonable suspicion of criminal activity.
Second, the officer testified that he ordered the Defendant out of the car for “officer safety purposes.” In Terry v. Ohio, 392 U.S. 1, 30-31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court found that temporary detention of an individual may be justified by an officer’s specific concern for his own safety. The Court noted that, in determining whether an officer acted reasonably under the circumstances, courts must give due weight to the specific reasonable inferences which officers are entitled to draw from the facts in light of their experience and ask whether a “reasonably prudent [person] in the circumstances would [have been] warranted in the belief that his safety or that of others was in danger.” Id. at 27, 88 S.Ct. 1868. According to the officer’s testimony, “when I interact with people that are in a vehicle ... I always ask them to step out of the vehicle most of the time.” Absent a reasonable suspicion that a crime has occurred, is occurring, or is about to occur, an officer may not convert a consensual encounter into an investigatory stop by ordering a citizen out of a parked car. Popple, 626 So.2d at 188 (defendant’s presence in a car parked in a desolate area, even though making furtive movements, did not provide the reasonable suspicion necessary to order the defendant out of the car).
*1165 Here, there was no indication that Defendant was involved in any criminal activity, nor was there any objective basis for the officer to conclude that his safety or that of the public was endangered. The area was not described as high in crime, and the officer did not describe seeing any furtive movements or illegal activity. See Gentles v. State, 50 So.3d 1192, 1198 (Fla. 4th DCA 2010) (finding no evidence was presented to show a specific concern for officer safety where there were “no furtive movements, nervous reactions, or any circumstances to warrant a belief that the officer’s safety was in danger”). Other than a comment on the lateness of the hour, the officer never testified about a specific concern for his own safety; to the contrary, the testimony suggested he had no specific reason to believe his safety was at risk and ordered him from the car based in part on his own standard practice. See, e.g., Ippolito v. State, 789 So.2d 423 (Fla. 4th DCA 2001) (officer lacked a well-founded suspicion of criminal activity to justify ordering the defendant out of his legally parked vehicle merely because it was late at night, the defendant was parked at a gas station in an area of past criminal activity, and the officer believed the defendant was untruthful about his purpose for being there); Currens v. State, 363 So.2d 1116 (Fla. 4th DCA 1978) (officer did not have sufficient reason for ordering the defendant to leave his car, where the officer observed the defendant at 1:30 a.m. in a sports car, legally parked, with the windows closed and engine off, and after seeing no unusual activity). Therefore, the court’s finding that “officer safety” was the reason for the instruction to Defendant to exit the vehicle was not supported by competent, substantial evidence. Peraza v. State, 69 So.3d 338, 340 (Fla. 4th DCA 2011).
Third, the officer testified that he also ordered Defendant out of the car because he smelled alcohol on Defendant’s breath while he was sitting in the driver’s seat. However, the officer testified that the odor of alcohol, coupled with Defendant’s admission that he had consumed a couple of beers, did not lead him to conclude that Defendant might be under the influence.
[Defense]: Okay. You did say that you did smell alcohol on his breath?
[Officer]: Yes, I did.
[Defense]: And at the deposition you acknowledged that it’s not illegal for someone to have a drink before driving?
[Officer]: That is correct.
[Defense]: You even stated that he was free to leave?
[Officer]: If he had said at the time I first made contact with him I’m going to get out of here, I’m going to leave. At that point he was free to leave, yes.
[Defense]: And you said even when he got out of the car he was free to leave.
[Officer]: Until the bag of cocaine dropped from his lap, yes.
[Defense]: So when you testified previously on the State[’]s cross — excuse me, on the State[’]s direct, that the reason for you pulling him out of the vehicle was because of the DUI or the suspicion that rose to the level of a DUI, that’s not what you said at the deposition.
[Officer]: Well, what do you mean? Can you rephrase that?
[Defense]: When the State was asking you questions before you stated that the reason why you pulled him out of the vehicle was because you smelled alcohol on his breath.
*1166 [Officer]: Right.
[Defense]: And he was sitting inside of the vehicle.
[Officer]: I believe I told you it was also for officer safety purposes. That when I interact with people that are in a vehicle, that I always ask them to step out of the vehicle most of the time.
[Defense]: Okay. And you even said that he would have been free to leave as long as he would have showed you his ID?
[Officer]: As long as he showed me he had a driver’s license, he would have been free to drive off.
[Defense]: And when asked about if he was able to walk away, you said he would have been free to leave?
[Officer]: Yes. Walk away, 100 percent.
(Emphasis added). This court and others have required more than the odor of alcohol to establish reasonable suspicion for an investigatory stop. See, e.g., State v. Castaneda, 79 So.3d 41 (Fla. 4th DCA 2011) (reasonable suspicion present where defendant was speeding, smelled of alcohol, and had bloodshot and watery eyes); State v. Ameqrane, 39 So.3d 339 (Fla. 2d DCA 2010) (reasonable suspicion existed where the defendant was speeding at four o’clock in the morning, had bloodshot, glassy eyes, and smelled of alcohol); Origi v. State, 912 So.2d 69 (Fla. 4th DCA 2005) (reasonable suspicion present where defendant was speeding, smelled of alcohol, and had bloodshot eyes); State v. Jimoh, 67 So.3d 240, 241 (Fla. 2d DCA 2010) (reasonable suspicion where defendant observed sitting in the driver’s seat of her parked car with the engine running and the headlights on, “slumped over” steering wheel, driver’s side window was open and the deputies detected a strong odor of alcohol coming from the car); State v. Taylor, 648 So.2d 701, 703 (Fla.1995) (factors creating reasonable suspicion of impairment include traffic violations, slurred speech, watery, bloodshot eyes, and a strong odor of alcohol).
From the testimony presented, even after speaking to Defendant, and despite smelling the alcohol on his breath, Defendant was always free to leave. If the officer had reasonable suspicion to believe Defendant was under the influence, or otherwise engaged in other criminal activity, he would not have been free to walk or drive away without further investigation.
Therefore, viewing the circumstances in their totality, the officer did not possess the requisite reasonable suspicion of criminal activity to order Defendant out of his parked car to conduct an investigatory stop. Because the detention of Defendant was improper, all the evidence resulting from this seizure should have been suppressed. Popple, 626 So.2d at 188. This exclusionary rule applies in probation revocation proceedings so that suppression of the fruit of the search in this case, i.e., the cocaine and paraphernalia, also prohibits that evidence from being considered on the issue of Defendant’s probation violation. See State v. Cross, 487 So.2d 1056 (Fla.1986); Lee v. State, 868 So.2d 577 (Fla. 4th DCA 2004); Morse v. State, 604 So.2d 496, 504 (Fla. 1st DCA 1992); Robinson v. State, 547 So.2d 321 (Fla. 5th DCA 1989); Kelly v. State, 536 So.2d 1113, 1114 (Fla. 1st DCA 1988).
As to the second issue, at the conclusion of the violation of probation hearing, the trial court stated:
All right. Well, based on the evidence presented and considering the arguments the Court concludes that the defendant violated his probation by failing to report to the probation officer as instructed. By failing to make himself available for supervision. I mean I *1167 don’t think the — couldn’t find him and locate him. He failed to show up for a while. By possession of cocaine and by operating a motor vehicle without a license or a suspended or revoked license. So, in those respects we conclude that he violated his probation.
According to this oral pronouncement, Defendant willfully and substantially violated only three of the six conditions alleged in the charging affidavit. Therefore, the court’s written order of revocation, issued almost two weeks later finding that Defendant violated each of the six conditions alleged in the affidavit, did not conform to the court’s oral pronouncement. Where a trial court’s written sentencing order conflicts with the oral pronouncement, the oral pronouncement controls. See, e.g., Smith v. State, 49 So.3d 833 (Fla. 1st DCA 2010); Dailey v. State, 791 So.2d 586, 588 (Fla. 3d DCA 2001); Tory v. State, 686 So.2d 689 (Fla. 4th DCA 1996); Williams v. State, 604 So.2d 8, 9 (Fla. 1st DCA 1992).
Because it is unclear from the record whether or not the trial court would have revoked Defendant’s probation and sentenced him to ten years of imprisonment based solely upon the violations for failing to report for supervision and driving without a license, we remand with instructions that the trial court reconsider Defendant’s probation revocation and subsequent sentence, and enter a written order consistent with this opinion. See Brown v. State, 12 So.3d 877, 879-80 (Fla. 4th DCA 2009); Oertel v. State, 82 So.3d 152, 157 (Fla. 4th DCA 2012).

Reversed and Remanded.

STEVENSON and CIKLIN, JJ., concur.