DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**MARCUS KENNARD LEWIS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-4587

[July 23, 2014]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Charles E. Burton, Judge; L.T. Case No. 2011CF003208AMB.

Carey Haughwout, Public Defender, and Louis G. Carres, Special Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Angela E. Noble, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The parameters of the Fourth Amendment are on review in this appeal from a criminal conviction and sentence for robbery and aggravated assault, both with a firearm and while wearing a mask. The defendant argues the trial court erred in denying his motion to suppress because law enforcement exceeded a consensual encounter with the defendant without reasonable suspicion. He also argues the trial court erred in admitting evidence of collateral crimes. We agree that the court erred in denying his motion to suppress and therefore reverse in part. We see no error in the admission of the collateral crime evidence and affirm on that issue.

On December 22, 2010, the defendant entered a food mart wearing a bright-yellow knit face mask and carrying a black handgun. He placed a bag, resembling a lady's purse, on the counter and demanded money. The clerk thought the defendant was familiar with the store because he pointed the gun precisely where money was held for the next shift. The clerk gave the money to the defendant, who exited the store and went east.

A witness, pulling out of a gas station across the street, saw the defendant approach the food mart, pull the yellow mask over his face, and enter the store. The witness called 911. He watched the defendant leave the store and go east.

The witness followed the suspect. At one point, the defendant stopped, turned around, and yelled for the witness not to call the police. This allowed the witness to get a good view of the defendant's face. The police responded to the scene, but did not find the defendant.

Six days later, the defendant entered the same food mart, where two other clerks were working. The defendant wore a black shirt, black trousers, a face mask, and gloves. He brandished a firearm and ordered one of the two clerks to give him the money. The defendant placed a bag on the counter and, after receiving the money, pointed his weapon at the same location where money was held for the next shift. After the clerk filled the bag with money, the defendant again left in an easterly direction.

The first deputy on scene met with the two clerks. One of them showed the deputy the direction in which the suspect left. The deputy issued a BOLO and began searching for the suspect. The deputy saw a male fitting the suspect's physical description, but wearing different clothing. The deputy shined his searchlight on him. Because he did not seem startled and did not take flight, the deputy continued on his way.

A second deputy in a marked police vehicle with his lights engaged was participating in a perimeter sweep. He saw the defendant, who looked over his shoulder at least twice in the direction of the food mart. No one else was walking in the area at the time.

The second deputy blocked the defendant's path with his vehicle, stepped out of the car, and approached him. He announced his presence and said: "Hey, come over here; I'd like to talk with you." The defendant complied.

Upon making contact, the deputy placed his hands on the defendant's chest and back, admittedly to see if the defendant's heartbeat was elevated or if his shirt was hot or cold. The defendant told the deputy that his cousin drove him home to get money, and he was walking back to McDonalds to meet his cousin. At this point, the deputy felt his suspicion had been raised enough to detain the defendant. He placed the defendant

in the back of his patrol car to await a show-up.[1]

The first deputy returned to where the defendant was being detained. He recognized him as the person he saw earlier. He questioned him without giving him *Miranda* warnings. The deputy returned to where he originally saw the defendant and started searching the bushes. He recovered a brown glove, a navy-blue hooded sweatshirt, a checkered purse, a firearm, a yellow mask, and shoes.

Several weeks later, a detective conducted a photo lineup with the witness from the first robbery, who positively identified the defendant. Based on that identification, the State charged the defendant with the first robbery. The yellow mask and firearm were tested and found to contain the defendant's DNA. The State then charged the defendant with the second robbery.

Prior to trial on the second robbery, the defendant moved to suppress all evidence obtained as a result of the stop. He argued that the encounter with the second deputy was not consensual because a reasonable person would not have felt free to leave. He argued that the encounter was an illegal stop because the second deputy did not have reasonable suspicion that he was engaged in criminal activity. Because the stop was illegal, the defendant argued that all evidence found as a result, including the DNA evidence, was the fruit of an illegal stop and should be suppressed. He also argued that his statements must be suppressed because he was never read *Miranda* warnings.

The State responded that the stop was legal and within the scope of a consensual encounter. Alternatively, if the stop was illegal, the evidence would have been inevitably found by officers.

The trial court denied the motion to suppress, finding that the defendant was not detained and his statements to the second deputy were part of a consensual encounter. The court also found that the first deputy's identification of the defendant in the back of the police car need not be suppressed because the initial stop was legal. The court, however, suppressed the defendant's statements to the first deputy because he was not read *Miranda* warnings.

The case proceeded to trial. The jury found the defendant guilty of

---

[1] At the suppression hearing, the second deputy testified that the defendant was not under arrest at that time. The show-up was negative, but the second deputy learned that the defendant was violating curfew, so he placed him under arrest.

robbery with a firearm while wearing a mask, and aggravated assault with a firearm while wearing a mask. The court sentenced the defendant to fifteen years' imprisonment for the robbery, with a ten-year mandatory minimum for possession of a firearm, and five consecutive years on the aggravated assault charge, with a three-year mandatory minimum for possession of a firearm. From his conviction and sentence, the defendant now appeals.

On appeal, the defendant maintains the trial court erred in denying his motion to suppress because the deputy's touching of him exceeded a consensual encounter. The State responds that the interaction between the deputy and the defendant was a consensual encounter, and the defendant was free to ignore the deputy's questions and continue on his way. The State argues that reasonable suspicion was unnecessary because it was a consensual encounter.

We have a mixed standard of review. We defer to the trial court's factual findings, but independently determine whether those facts amount to reasonable suspicion as a matter of law. *Miranda v. State*, 816 So. 2d 132, 134 (Fla. 4th DCA 2002).

We agree with the defendant that what started as a consensual encounter transformed into a stop without the requisite reasonable suspicion when the deputy placed his hands on the defendant. As such, the trial court erred in denying the motion to suppress. This case is similar to *Copeland v. State*, 717 So. 2d 83 (Fla. 1st DCA 1998).

There, deputies were patrolling a high-crime area when they recognized two individuals, one of whom was Copeland. *Id.* at 84. The deputies spoke with them until one of the deputies noticed a bulge in Copeland's pocket and squeezed it. *Id.* After discovering that it was not hard or metallic, the deputy asked what the object was. *Id.* Copeland responded that it was "reefer," and was subsequently arrested for possession of marijuana. *Id.*

Copeland moved to suppress the drugs, arguing that the officer's touching transformed the consensual encounter into a stop without reasonable suspicion. *Id.* The trial court denied the motion, and Copeland appealed. *Id.* The First District reversed, holding that the motion to suppress should have been granted because the touching turned the consensual encounter into a stop. *Id.* at 85.

Here, as in *Copeland,* the initial encounter with the defendant was consensual. The second deputy testified that his interaction with the defendant was nonchalant and consensual. He asked the defendant to

approach for questioning. The defendant complied. But the consensual nature of the encounter ceased when the deputy touched the defendant's chest and back, admittedly to gain information about his heart rate and temperature. While these determinations would, and did, raise the level of the deputy's suspicion, they also converted the consensual encounter into a stop.

"Although there is no litmus-paper test for distinguishing a consensual encounter from a seizure, a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquiries . . . ." *Golphin v. State*, 945 So. 2d 1174, 1182 (Fla. 2006) (quoting *Popple v. State*, 626 So. 2d 185, 187–88 (Fla. 1993)). When viewed objectively, a reasonable person would not feel free to leave under the circumstances presented here. The trial court erred in denying the motion to suppress.

This error also intruded on the court's ruling concerning the evidence discovered as a result of the stop. The State relies on the inevitable discovery doctrine to avoid the consequences of the illegal stop, but that doctrine is inapplicable here.

"For the inevitable discovery doctrine to apply, the state must establish by a preponderance of the evidence that the police ultimately would have discovered the evidence *independently* of the improper police conduct . . . ." *McDonnell v. State*, 981 So. 2d 585, 591 (Fla. 1st DCA 2008) (emphasis added). The State had the burden of proving that the evidence would have been found regardless of seeing or speaking to the defendant. *Id.* at 591–92.

The first deputy testified that once he saw the defendant in the back of the police car, he recognized him as the man he had seen earlier. The defendant's answers to his questions gave him the idea to go back and search the bushes. It is therefore unlikely that the deputy would have returned to the defendant's prior location to search without the benefit of the unlawful stop and his questioning of the defendant.[2] For this reason, the trial court should have suppressed the evidence found by the bushes.

We find no merit in the *Williams*[3] rule issue raised. The trial court correctly found that the robberies were sufficiently similar to warrant the

---

[2] While the trial court suppressed that conversation, the fact remains that the deputy returned to search the location because of the answers given to him by the defendant, who had not been read his *Miranda* warnings.

[3] *Williams v. State*, 621 So. 2d 413 (Fla. 1993).

introduction of the evidence of the first robbery. *See Johnson v. State*, 110 So. 3d 954 (Fla. 4th DCA 2013) (affirming the admission of *Williams* rule evidence where each robbery was committed at a similar location in a similar way, and within close temporal proximity). Here, the two robberies were committed in the same location, six days apart, by a single suspect. The suspect held a gun in his right hand, wore a bright-yellow mask, carried a checkered bag that he placed on the counter, pointed the gun at a location where money was kept, scanned the room during the robbery, and held the mask in place with his left hand. Store security cameras recorded the similarity of both robberies.

For these reasons, we reverse the denial of the motion to suppress, but affirm the admission of *Williams* rule evidence.

*Affirmed in part; Reversed in part; and Remanded for further proceedings consistent with this opinion.*

DAMOORGIAN, C.J., and WARNER, J., concur.

\*         \*         \*

**Not final until disposition of timely filed motion for rehearing.**

6