# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D23-118
LT Case No. 16-2021-MM-14027-AXXX

_____

JASON HASSAN BAXTER,

     Appellant,

     v.

STATE OF FLORIDA,

     Appellee.

_____

On appeal from the County Court for Duval County.
Julie K. Taylor, Judge.

Charlie Cofer, Public Defender, and Elizabeth Hogan Webb, Assistant Public Defender, Jacksonville, for Appellant.

Ashley Moody, Attorney General, and Christina Piotrowski, Assistant Attorney General, Tallahassee, for Appellee.

October 27, 2023

MACIVER, J.

     Jason Baxter appeals a judgment and sentence for one count of possession of drug paraphernalia after he entered a nolo contendere plea and reserved his right to appeal the denial of his dispositive motion to suppress. We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.030(b)(1)(A). On appeal, Baxter argues that the trial court erred when it denied his motion because he was detained without reasonable suspicion and

subjected to an unlawful search and seizure. Specifically, Baxter makes two arguments regarding his detention and the subsequent seizure of his person and search of his vehicle. First, he argues that he was seized for Fourth Amendment purposes when the arresting officer approached his vehicle after activating his emergency lights. At that point, he argues, the officer did not have the necessary reasonable suspicion required to involuntarily detain him. Next, he argues that after the initial investigatory detention, his seizure was based on the "plain smell" doctrine that as a matter of law should no longer be sufficient to establish probable cause. For the reasons that follow, we affirm.

Facts

According to testimony and video evidence, on August 16, 2021, at approximately 10:30 p.m., Officer T.W. Accra with the Jacksonville Sheriff's Office (JSO) saw Baxter pull into the parking lot of a closed CVS drugstore. Accra drove by the property and decided to come back around to both check on Baxter's well-being and to ensure no property crimes were being committed. Accra pulled into the parking lot and stopped his marked JSO vehicle near Baxter's parked car without blocking Baxter's ability to drive away. Accra activated his emergency lights before exiting his vehicle and approaching Baxter. Accra testified that he was wearing his class C uniform, which consists of tactical gear, tactical vest, black T-shirt, and black cargo pants. He testified that he activated his emergency lights so that other officers would more readily know where he was and, because he was not in a traditional police uniform, so others would more readily recognize him as a police officer before he approached.

As Accra got out of his vehicle and walked over to the passenger side of Baxter's car, Baxter had already rolled down his passenger-side front window. Accra testified that he immediately smelled what seemed to be fresh marijuana. Accra also testified that before approaching the vehicle he saw Baxter make some sort of movement towards the backseat and place something there. Accra identified himself, asked Baxter how he was doing, and informed Baxter that the reason he made contact with him was because he was parked outside of a closed business. Baxter did not ask if he was detained or if he was free to leave. Instead, Baxter

2

responded, "Oh I'm actually just about to leave, I was waiting for my friend to get from the gym, I just got off work." Accra asked Baxter if he had a driver's license on him and Baxter gave him his license.

When Accra asked, "So how far out is your friend?" the defendant pointed in a direction, hesitated, and said, "Towards uhm. Towards. I'm trying to think. (pause) My friend Thomas. He's at the gym. He's at the Baileys. I'm waitin' for him. He lives in Arlington. Over on Townsend. Townsend, yes. In apartments on Townsend. . . . I know you're probably like he's makin' up a story . . . I'm actually waitin' for him, 'cause I live on the Southside as you can see." The officer then asked, "Why are you waiting for him here out of curiosity?" Baxter responded, "I just had to pull over to make sure my tire was straight. I just got back in the car, that's all. . . . I'm about to leave actually." The officer then asked, "Well if you was waitin' for him, and he's not here, why you leavin' all of the sudden?" Baxter responded, "I'm not waiting for him to get here, I told you I pulled over to check my tire. . . . I'm about to go to his house now." At that point, the officer says, "Well just stand by, I'm gonna check everything out, and we'll go from there."

Accra returned to his patrol car to check Baxter's information. While at his vehicle, Accra can be heard on his body camera recording saying (presumably to another officer) to "stay [present] with him at the driver door, I smell fresh marijuana – big blue bag in the back." A moment later, presumably to an additional officer, Accra can be heard saying that Baxter's "story is kind of doodoo" and that he smelled fresh marijuana "not even burned – and he has a huge backpack that I saw him put back there when I first pulled up." As Accra finished this statement, he was exiting his vehicle to return to Baxter. Another officer can be seen standing at the door of Baxter's vehicle. There is no evidence in the record concerning any interaction between that officer and Baxter prior to Accra's return to the vehicle.

As Accra approached, the other officer directed Baxter to step out of the vehicle and can be heard on Accra's body camera recording asking Baxter if he has a medical marijuana card. Baxter responded no. Baxter was asked if he smokes marijuana and he responded no. He was asked if he smokes hemp products

3

but cannot be heard responding because of crosstalk. The officer told Baxter that he was going to be detained for a minute, that he "has weed all over [him]," and that they could smell marijuana either fresh or burnt from outside the vehicle. Baxter was handcuffed and placed in the back of a patrol car. After unsuccessfully seeking permission to search Baxter's vehicle, the officers proceeded with an involuntary search of the vehicle and informed Baxter that it was based upon the probable cause that they obtained from the smell coming from his vehicle.

Based upon items recovered during the search, Baxter was arrested and ultimately charged with misdemeanor possession of less than twenty grams of marijuana, and possession of drug paraphernalia (also a misdemeanor). Baxter filed a motion to suppress, arguing that the marijuana and paraphernalia were discovered based upon a detention without reasonable suspicion and a subsequent illegal search. At the hearing on the motion the only witness testimony was from Officer Accra. The State and Baxter stipulated to the introduction of Accra's body-camera video into evidence. The trial court denied the motion and Baxter entered a plea of *nolo contendere* to the paraphernalia charge. The state entered a *nolle prosequi* for the marijuana charge. At the time of the plea there was a finding made on the record that the motion to suppress was dispositive.[1] Baxter appeals the order denying his motion to suppress.

## Standard of Review

In *State v. Willis*, 276 So. 3d 448 (Fla. 5th DCA 2019), this court explained the standard of review that we apply in this case, as follows:

> We review a suppression order to determine whether competent, substantial evidence supports the trial court's findings of historical fact. *State v. Roman*, 983

---

[1] While Baxter initially entered the plea without reserving the right to appeal the denial of his suppression motion, the court granted a subsequent motion to vacate and set aside the plea—specifically for the purpose of appealing the denial of the motion to suppress.

So. 2d 731, 734 (Fla. 3d DCA 2008). "It has also been observed, however, that to the extent a ruling is based on an audio recording, 'the trial court is in no better position to evaluate such evidence than the appellate court, which may review the tape for facts legally sufficient to support the trial court's ruling.' " *Bailey v. State*, 31 So. 3d 809, 812 (Fla. 1st DCA 2009) (citing *Dooley v. State*, 743 So. 2d 65, 68 (Fla. 4th DCA 1999)). We review that evidence and any inferences from it in favor of supporting the trial court's ruling. *Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002). We must "independently review mixed questions of law and fact that ultimately determine constitutional issues." *Schoenwetter v. State*, 931 So. 2d 857, 866 (Fla. 2006). The trial court's application of law to the facts in a finding as to reasonable suspicion, or the lack thereof, is subject to de novo review. *State v. Cruse*, 121 So. 3d 91, 95 (Fla. 3d DCA 2013) (citing *Ornelas v. United States*, 517 U.S. 690, 697, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996)).

*Id*. at 451–52.

## Initial Detention

Baxter's initial argument is that when Accra activated his emergency lights, the interaction became an investigatory detention. He argues that because Accra had not yet established sufficient grounds to reasonably suspect criminal activity, the detention was unlawful, in violation of Baxter's Fourth Amendment right to be free from unreasonable search and seizure. Baxter's argument fails as follows.

"[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991). Importantly, a person's belief that they are not free to

5

terminate the encounter must be based on a show of force or authority by the police.

Baxter's argument that the activation of police lights elevated the interaction from a consensual interaction to a detention has been conclusively rejected by the Florida Supreme Court. In *G.M. v. State*, the Court recognized that the "United States Supreme Court has not receded from the longstanding principle that per se rules are inappropriate in the context of Fourth Amendment seizure analyses." 19 So. 3d 973, 979 (Fla. 2009). It expressly rejected "the absolute and inflexible proposition that activation of police lights alone *always* constitutes a seizure." *Id.* Instead holding that, "the activation of police lights is *one important factor* to be considered in a totality-based analysis as to whether a seizure has occurred." *Id.*

Here, there is nothing in the record indicating any heightened show of force or authority on the part of Accra that would have made a reasonable person feel that they could not terminate the encounter. There is no indication that Accra entered the lot aggressively. He did not park in a manner that blocked Baxter from leaving. He did not shine his vehicle spotlight on Baxter. When he exited his vehicle, Accra casually approached the passenger side of Baxter's car. He was cordial, identifying himself and asking Baxter how he was doing. He then informed Baxter the reason he was making contact was because Baxter was parked outside of a closed building. Baxter did not decline to interact with Accra,[2] but instead voluntarily offered him the explanation that he was just about to leave and was waiting for a friend. At this point Accra asked for Baxter's identification. The Supreme Court has made clear "that even when officers have no basis for suspecting a particular individual," it is lawful to ask an individual questions and examine their identification, "as long as the police do not convey a message that compliance with their requests is required." *Bostick*, 501 U.S. at 434.

---

[2] We do not suggest that a person must affirmatively decline an officer's requests or attempt to terminate the encounter before a seizure can occur. We only recognize an absence of actions that would clearly establish that a detention had occurred.

6

Because Baxter does not assert and the record does not provide any basis other than the activation of emergency lights to establish that he was detained during this initial interaction, we reject his argument that he was detained without reasonable suspicion.

Indeed, by the point where the interaction arguably does become a detention, the record shows enough factual basis to establish objective reasonable suspicion. "In determining whether an officer had a reasonable suspicion of criminal activity, courts consider the totality of the circumstances." *Grayson v. State*, 212 So. 3d 481, 484 (Fla. 5th DCA 2017) (quoting *Parker v. State*, 18 So. 3d 555, 558 (Fla. 1st DCA 2008)). The record makes clear that Accra initially saw Baxter pulling into the parking lot of a closed location. Accra took a moment to turn around and head back to the lot and saw that Baxter had backed into a parking spot. Accra saw Baxter place something into the back seat when he saw law enforcement approach. Accra smelled what he believed to be marijuana in Baxter's vehicle. Baxter gave what Accra thought to be a dubious explanation about why he was in the parking lot— initially saying he was meeting a friend.

The Continued Investigation and Search

Baxter's second argument is that his continued detention and seizure and the subsequent search were unlawful because the search was based *solely* on the odor that Accra believed to be marijuana. Baxter's argument develops from the concurrence of Judge Bilbrey in *Hatcher v. State*. 342 So. 3d 807 (Fla. 1st DCA 2022). The concurrence lays out the case for receding from what is generally known as the plain smell doctrine—that is, that the smell of cannabis is itself sufficient to establish probable cause. *See, e.g., State v. Williams*, 967 So. 2d 941, 941 (Fla. 1st DCA 2007). Essentially, because of changes to both federal and state laws that legalized the use of hemp—the odor of which is indistinguishable from marijuana—the potentially lawful explanation for "plain smell," the concurrence argues, cannot provide a basis for probable cause. Unanswered in the analysis are several open and relevant questions. Is plain smell still sufficient for reasonable suspicion (the *Hatcher* concurrence seems to suggest not)? Is plain smell with the additional fact that one is in a public place sufficient to

establish reasonable suspicion? Is plain smell while in a motor vehicle more suspicious? Sufficiently so for probable cause? The Second District answered these questions in *Owens v. State.* 317 So. 3d 1218, 1219 (Fla. 2d DCA 2021). *Owens* holds that plain smell is still probable cause, notwithstanding the legalization of hemp, which, absent an interdistrict conflict, is the binding law for all circuit courts in Florida. *Pardo v. State,* 596 So. 2d 665, 666 (Fla. 1992). Baxter asks us to decline to adopt that opinion and hold that plain smell is no longer probable cause or reasonable suspicion justifying a Fourth Amendment intrusion.

We need not and indeed cannot reach that issue. While the recent changes in the law might, as suggested by Judge Bilbrey's thoughtful concurrence in *Hatcher*, eliminate the previous doctrine that plain smell alone is sufficient to establish probable cause, that case is not before us. Contrary to Baxter's assertions, the detention and subsequent search were not authorized by plain smell *alone.*

The facts that established reasonable suspicion for Baxter's initial detention have been enumerated in the discussion above. Baxter would have us parse all these facts separately, and where any fact does not by itself justify a detention (i.e., where there is a potential lawful explanation), exclude it from our analysis—thus, whittling away the facts that contribute to the whole situation so as to proceed on plain smell alone. That approach is simply not consistent with a totality of the circumstances analysis. The Supreme Court instructs:

> Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion. We said in *Reid v. Georgia,* "there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot." Indeed, *Terry* itself involved "a series of acts, each of them perhaps innocent" if viewed separately, "but which taken together warranted further investigation." We noted in *Gates,* that "innocent behavior will frequently provide the basis for a showing of probable cause," and that "[i]n making

8

a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." That principle applies equally well to the reasonable suspicion inquiry.

*United States v. Sokolow*, 490 U.S. 1, 9 (1989) (internal citations omitted).

Here, officers had already observed Baxter pulling in and parking at a closed business; that he gave inconsistent answers about his activity; that he claimed to be checking his tire while he was backed into a space; that he placed his backpack into the backseat as soon as he saw law enforcement; and, that he smelled of marijuana through the open window of the car. After his initial detention, the record shows that Baxter was asked about and denied being a user of marijuana or having a medical marijuana card. He also denied smoking in response to being asked whether he smoked hemp. Additionally, officers observed loose marijuana ("shake") on Baxter. Taken together, these facts, developed over the course of their brief investigation, provided the officers with the probable cause to search Baxter's vehicle. In a different scenario, where a search is conducted truly on plain smell *alone*, the outcome might be different. But based upon the facts in the record of the case before us, we affirm the denial of Baxter's motion to suppress.

WALLIS, J., concurs, with opinion.
KILBANE, J., concurring in part and dissenting in part, with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

WALLIS, J., concurring.

I fully concur with Judge MacIver's majority opinion in this case.  I write additionally to address two points.  First, after having conducted a detailed review of the officer's bodycam video footage, it is clear to me that Baxter presented two inconsistent stories to Officer Accra, neither of which was consistent with what the officer observed at the scene.  Baxter gave Accra conflicting statements about why he was at the location, first stating that he was waiting for a friend but was just about to leave.  Upon further questioning about that scenario, Baxter struggled to provide details to Accra and spontaneously stated, "I know you're probably like he's makin' up a story."  Then Baxter changed his story, stating, "I just had to pull over to make sure my tire was straight.  I just got back in the car, that's all."  Neither of Baxter's explanations comported with Accra's observations.  Accra testified that he observed Baxter pulling into the parking lot of a closed business, so he turned around, pulled into the parking lot, and approached Baxter's car.  Taking that scenario in the light most favorable to the decision, Baxter would not have had time to wait for a friend in the parking lot, or even get out of his car, check his tire, and get back into his car before Officer Accra arrived on scene.  Baxter's inconsistent responses contributed to the totality of circumstances giving Officer Accra a reasonable, articulable suspicion that Baxter was in possession of illegal marijuana and was attempting to hide that fact from the officer.  Consequently I believe that Accra was authorized to temporarily detain Baxter for further investigation.

Second, I write to highlight a concern created by the enactment of the "State hemp program" in section 581.217, Florida Statutes (2019), the Florida Comprehensive Drug Abuse Prevention Control Act definition of cannabis in section 893.02(3), Florida Statutes (2021), and  current caselaw, including *Owens v. State*, 317 So. 3d 1218 (Fla. 2d DCA 2021), Judge Bilbrey's concurring opinion in *Hatcher v. State*, 342 So. 3d 807 (Fla. 1st DCA 2022), and Judge Kilbane's dissent in this case.  I believe these developments have  created confusion about whether officers in Florida still have reasonable suspicion to detain and probable

cause to conduct a search based solely on what has been commonly known as the plain smell doctrine. Therefore, I believe that a question has arisen regarding the applicability of the plain smell doctrine in certain circumstances and that law enforcement officers in this state need guidance and instruction on the matter so that they can perform their job while insuring an individual citizen's constitutional rights. Accordingly, I believe the following question is one of great public importance:

> DOES THE PLAIN SMELL DOCTRINE STILL APPLY SUCH THAT SMELLING CANNABIS IS ITSELF SUFFICIENT TO ESTABLISH REASONABLE SUSPICION AND PROBABLE CAUSE?

KILBANE, J., concurring in part and dissenting in part.

I agree with the majority's conclusion that Baxter was not seized as soon as Officer Accra ("Accra") activated his emergency lights. However, the majority finds that Accra developed reasonable suspicion based on a totality of the circumstances that could have only included: Baxter being parked in front of a closed business, placing a backpack in the backseat, giving "inconsistent" answers, and the smell of fresh marijuana. Without the smell of fresh marijuana, there is little doubt that the remaining circumstances would be insufficient to provide a basis for reasonable suspicion. The degree of suspicion that attaches to these behaviors under the facts of this case is just too insignificant. So, the question becomes whether the addition of the smell of fresh marijuana into that analysis is sufficient under the totality of the circumstances to give rise to reasonable suspicion? I submit that it is not. Because it is not, the majority's finding of reasonable suspicion based on these circumstances is in fact a continued reliance on the "plain smell" doctrine. However, state and federal law surrounding marijuana has changed significantly since the "plain smell" doctrine became an exception to the warrant requirement, and as a result, I believe its underpinnings are no longer sound. Here, because the only meaningful factor in Baxter's detention was the smell of fresh marijuana, I respectfully dissent.

All citizens have the right to be free from unreasonable seizure guaranteed in the Fourth Amendment to the United States Constitution and article 1, section 12 of the Florida Constitution. Furthermore, "[t]he protections against unreasonable searches and seizures afforded by the Florida Constitution must be construed in conformity with the Fourth Amendment to the United States Constitution as interpreted by the United States Supreme Court." *Caldwell v. State*, 41 So. 3d 188, 195 (Fla. 2010) (citing Art. I, § 12, Fla. Const.).

To justify an investigatory stop, a law enforcement officer must develop reasonable suspicion to believe that a person has committed, is committing, or is about to commit a crime. *State v.*

12

*Allen*, 994 So. 2d 1192, 1193 (Fla. 5th DCA 2008); § 901.151(2), Fla. Stat. (2021). "Therefore, 'an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.'" *McMaster v. State*, 780 So. 2d 1026, 1028 (Fla. 5th DCA 2001) (quoting *Popple v. State*, 626 So. 2d 185, 186 (Fla. 1993)). The threshold to establish reasonable suspicion is not absolute nor is it "readily, or even usefully, reduced to a neat set of legal rules." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). It must "be assessed based on 'the totality of the circumstances—the whole picture,' and 'from the standpoint of an objectively reasonable police officer.'" *State v. Teamer*, 151 So. 3d 421, 426 (Fla. 2014) (citation omitted) (first quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981); *United States v. Arvizu*, 534 U.S. 266, 277 (2002); and then quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *Arvizu*, 534 U.S. at 277)). Moreover, it has been recognized that "'[i]nnocent behavior will frequently provide the basis' for reasonable suspicion." *Id.* (quoting *Sokolow*, 490 U.S. at 10). Thus, the "relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Sokolow*, 490 U.S. at 10 (quoting *Gates*, 462 U.S. at 243–44, n.13). The reasonableness of an officer's suspicion also "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Id.* at 428 (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)).

Here, the entirety of the facts that could possibly comprise the majority's totality of the circumstances analysis, i.e., the facts of the encounter *before* Baxter was unquestionably seized, are as follows. At approximately 10:30 p.m., Accra observed Baxter pulling into the parking lot of a closed CVS. After making a U-turn and returning to the CVS to find Baxter backed into a parking space, Accra parked catty-corner to Baxter with his emergency lights on and approached Baxter at his open passenger side window. Accra's stated purposes for stopping were to (1) check on Baxter from a well-being standpoint; and (2) make sure a burglary was not in progress. He was not responding to any calls for assistance and there is no indication this was a high crime area. When Accra pulled into the parking lot and exited his patrol car, it became apparent that Baxter was alert and aware of Accra's

presence as he greeted Accra through his open window. When Accra approached Baxter's vehicle, he smelled the odor or aroma of fresh marijuana.

After Accra told Baxter he was "making contact" with him because he was parked near a closed business, Baxter explained that he was just about to leave and that he was waiting for a friend "to get from the gym." Accra asked why Baxter pulled off in the CVS parking lot, to which Baxter responded that he needed to check his tire. Accra then inquired why he was in a hurry to leave if he was waiting for a friend. Baxter explained that he was not waiting for his friend to arrive at the parking lot; rather, he was leaving to go to his friend's house. In response to Baxter saying, "I'm about to go to [my friend's] house now," Accra instructed Baxter to stand by so that he could check everything out, which he did without incident. Throughout this interaction, Baxter answered all of Accra's questions and complied with every direction. When Accra returned from his patrol car, Baxter was asked to step out of his vehicle, handcuffed, and placed in the backseat of Accra's patrol car.[1] Three officers searched the vehicle and found marijuana and drug paraphernalia.

At the suppression hearing, Accra testified that his criminal investigation began the minute the smell of fresh marijuana hit his nose. He further testified that he observed Baxter reach into the back seat before he approached the vehicle.[2] The trial court,

_____

[1] The majority discusses Baxter's inconsistent answers to questions regarding medical marijuana and hemp and Accra's observations regarding "shake" on Baxter's leg. However, these factors came *after* Baxter was asked to step out of his vehicle. Nothing that occurs from the point when Baxter was asked to step out of his vehicle can be considered in determining whether Accra had the requisite reasonable suspicion. *See Popple*, 626 So. 2d at 188.

[2] Notwithstanding the majority's position, there is no indication in the record that Baxter saw Accra approaching when he placed the backpack in the back seat. While it cannot be seen on the bodycam video, Accra testified that he approached and observed Baxter make "an overt to the back of the vehicle to place

14

relying on existing precedent, denied Baxter's motion to suppress because Accra established reasonable suspicion when he detected the odor of marijuana as soon as Baxter rolled down his window. Although the trial court only relied on the smell of marijuana in its ruling, the standard of review permits an appellate court to independently review "mixed questions of law and fact that ultimately determine constitutional issues." *State v. Betz*, 815 So. 2d 627, 634 (Fla. 2002) (quoting *Connor v. State*, 803 So. 2d 598, 608 (Fla. 2001)). As such, an appellate court is not bound by the trial court's finding of reasonable suspicion based solely on the smell of marijuana and applies a totality of the circumstances analysis. *See State v. Baez*, 894 So. 2d 115, 117 (Fla. 2004) (stating that "the totality of the circumstances controls in cases involving the Fourth Amendment").

Looking at the facts here, unless the smell of marijuana remains determinative or is otherwise a "super factor" in establishing reasonable suspicion, the other factors present in this case do not come close to what has been previously considered sufficient to establish reasonable suspicion. *See, e.g., Price v. State*, 120 So. 3d 198, 202 (Fla. 5th DCA 2013) (finding that officers lacked reasonable suspicion where they observed the defendant "walking out of a pharmacy with a white bag and 'mannerisms' of head and arm movements of passengers in a vehicle"); *Baker v. State*, 754 So. 2d 154, 154 (Fla. 5th DCA 2000) ("The fact that [the defendant] was parked late at night near a closed business does

---

something there." According to his testimony, this took place before Baxter "wound down his windows" to speak with him. At this point in time, Accra had not announced his presence, there is no testimony or bodycam video evidence to support that Baxter was alerted to police presence, and Accra did not describe this action as an attempt to conceal. *See Hunter v. State*, 32 So. 3d 170, 174–75 (Fla. 4th DCA 2010) (explaining that the act of rummaging in one's pockets is not suggestive of criminal conduct and that "[t]he officers did not describe this activity as an act of concealment, because the officers had not announced their presence before they observed this conduct"). Under the circumstances, Baxter placing a backpack in the backseat is equally consistent with the actions of a person who is preparing to drive away.

not establish grounds for a *Terry* stop."); *Jaudon v. State*, 749 So. 2d 548, 549–50 (Fla. 2d DCA 2000) (finding that evidence should have been suppressed where officers stopped the defendant in a parking lot to "dispel their suspicions about his conduct"); *Jordan v. State*, 707 So. 2d 338, 339 (Fla. 2d DCA 1998) (finding that law enforcement did not have reasonable suspicion to detain the defendant where his pickup truck was parked in a dark area next to a closed business that had been burglarized in the past); *Smith v. State*, 592 So. 2d 1206, 1207–08 (Fla. 2d DCA 1992) (finding that evidence should have been suppressed where deputies stopped the appellant because "he made a quick movement and it appeared to the deputies that the appellant was attempting to conceal something").[3]  While innocent conduct may be considered in a totality of the circumstances analysis, the relevant inquiry examines "the degree of suspicion that attaches."  *See Sokolow*, 490 U.S. at 10.  Based on the record, little suspicion if any can be attached to the circumstances other than the smell of marijuana.

Without supporting authority, the majority finds that the facts here are sufficient for reasonable suspicion, thereby avoiding the ultimate issue.  However, an examination of all the relevant facts reveals that the smell of marijuana is the only circumstance

---

[3]  Moreover, "law enforcement actions that might otherwise violate the Fourth Amendment can be found lawful when they occur in connection with an officer's 'community caretaking functions, totally devoid from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *Taylor v. State*, 326 So. 3d 115, 117 (Fla. 1st DCA 2021) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). "However, once a police officer's concern for the welfare of the person has been satisfied, a continued detention is not permissible unless the police officer has reasonable suspicion that the person has committed or is committing a crime." *Daniels v. State*, 346 So. 3d 705, 708 (Fla. 2d DCA 2022).  Upon the initial encounter, Baxter was clearly alert and not in need of any assistance from Accra, and by Accra's own admission, the exercise of his community care taking function was not devoid of detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.  Therefore, community caretaking cannot save the majority's analysis here.

that could have formed the basis of Accra's investigation and Baxter's detention. Because the degree of suspicion attached to Baxter's other noncriminal conduct does not give rise to a reasonable, well-founded suspicion of criminal activity, the issue must turn on whether, in light of the dramatic changes to both Florida and federal law regarding hemp, the smell of what is believed to be marijuana alone continues to provide reasonable suspicion for an investigatory detention. *See Fleeman v. Case*, 342 So. 2d 815, 818 (Fla. 1976) (explaining that a court does not ordinarily reach a constitutional question unless "the principle contention of the parties and the rulings of the trial courts below are predicated on this constitutional issue"); *see also Menendez v. W. Gables Rehab. Hosp., LLC*, 123 So. 3d 1178, 1182 (Fla. 3d DCA 2013) ("[I]f it is not necessary to decide more, it is necessary not to decide more." (quoting *PDK Labs., Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring))). Just as it would be improper for me to exceed my role and decide an issue beyond what is necessary, the inverse is equally true: failure to reach an issue properly before me is a failure to fulfill my constitutional role.

Applying a totality of the circumstances analysis to the case at hand is only necessary because of the substantive and substantial changes to both Florida and federal law, which call into question the continued viability of the "plain smell" doctrine. In years past, the smell of marijuana alone was all that was required. *See, e.g.*, *State v. Hill*, 54 So. 3d 530, 531 (Fla. 5th DCA 2011); *State v. Reed*, 712 So. 2d 458, 460 (Fla. 5th DCA 1998); *Harvey v. State*, 653 So. 2d 1146 (Fla. 5th DCA 1995); *State v. T.T.*, 594 So. 2d 839, 840 (Fla. 5th DCA 1992); *State v. Jarrett*, 530 So. 2d 1089 (Fla. 5th DCA 1988); *State v. Wells*, 516 So. 2d 74, 75 (Fla. 5th DCA 1987). This was appropriate because "[t]he mere possession of marijuana [was] illegal," *Wells*, 516 So. 2d at 75; its odor was "very distinctive," *T.T.*, 594 So. 2d at 840; and "evidence in the plain smell may be detected without a warrant." *Nelson v. State*, 867 So. 2d 534, 537 (Fla. 5th DCA 2004). However, in December 2018, federal law changed to exclude hemp from the definition of marijuana. *See* 21 U.S.C. § 802(16)(B) (2018). In July 2019, the Florida Legislature followed suit and enacted the "State hemp program." § 581.217, Fla. Stat. (2019). Under section 581.217(2)(b), Florida Statutes (2021), "[h]emp-derived

17

cannabinoids, including, but not limited to, cannabidiol, are not controlled substances or adulterants." The Legislature also amended the Florida Comprehensive Drug Abuse Prevention and Control Act to exclude hemp and medical marijuana from the definition of "cannabis." § 893.02(3), Fla. Stat.

Importantly, the smell of hemp and marijuana cannot be distinguished. *See Hatcher v. State*, 342 So. 3d 807, 811 n.3 (Fla. 1st DCA 2022) ("There was undisputed testimony at the suppression hearing that hemp and marijuana are indistinguishable by sight or smell."); *Owens v. State*, 317 So. 3d 1218, 1219 (Fla. 2d DCA 2021) (recognizing that a person may have a legitimate explanation for the smell of fresh marijuana, "such as where the individual has a lawful prescription for it, or that the substance is, in fact, hemp"); *see also* DEP'T OF AGRIC. & CONSUMER SERVS., HEMP AND CBD INFORMATION [FLORIDA] FOR LAW ENFORCEMENT 15,[4] ("Hemp and illegal cannabis can look, feel, and smell the same, and both substances can be smoked. Currently, there is no known way to distinguish Hemp and illegal cannabis based on plain view or plain odor alone."); Cynthia A. Sherwood et al., *Even Dogs Can't Smell the Difference: The Death of "Plain Smell," As Hemp Is Legalized*, 55 Tenn. B.J. 14, 15 (Dec. 2019) (explaining that legal hemp and illegal marijuana smell the same whether unburned or burned). This means that a law enforcement officer who smells an odor or aroma of marijuana can no longer immediately know whether it is emanating from legal hemp, legal medical marijuana, or illegal marijuana. As a result, the basic tenet behind courts' adoption of the "plain smell" doctrine no longer applies to the smell of marijuana. *See Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) ("If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—i.e., if 'its incriminating character [is not] immediately apparent,'—the plain-view doctrine cannot justify its seizure." (alteration in original) (citation omitted)); *United States v. Angelos*, 433 F.3d 738, 747 (10th Cir. 2006) ("'The plain smell doctrine,' in turn, 'is simply a logical extension of the plain view' doctrine.").

---

[4] https://ccmedia.fdacs.gov/content/download/94417/file/hemp-and-cbd-information-for-law-enforcement.pdf (last visited Sept. 29, 2023).

Because the smell of marijuana alone no longer immediately indicates the presence of contraband, we must again think about how the smell of marijuana will be weighed in the Fourth Amendment analysis. At most, the plain smell of marijuana by itself presents an ambiguity. While the presence of ambiguous behavior can authorize further investigation, suspicion stemming from such ambiguity must still be reasonable and cannot in and of itself constitute reasonable suspicion. *See Teamer*, 151 So. 3d at 427 (citing *Popple*, 626 So. 2d at 186).[5] As such, the smell of marijuana remains a relevant factor to consider under the totality of the circumstances. *See State v. Francisco Perez*, 239 A.3d 975, 985 (N.H. 2020) (holding that the odor of marijuana remains a relevant factor that can be considered among the totality of the circumstances "in determining whether reasonable, articulable suspicion of criminal activity exists" in light of changes to state law). However, under the facts of this case and when applying the smell of marijuana as a factor in a totality of the circumstances analysis, it is difficult to reach the conclusion that Accra's suspicions and Baxter's detention were reasonable. In fact, other than the potential crime of unlawful possession of marijuana, Accra had no suspicion that Baxter was engaged in any other criminal activity.

---

[5] The *Teamer* court found that despite a potentially ambiguous situation, the single noncriminal factor involving a discrepancy between the vehicle registration and the color of the vehicle did not provide a basis for reasonable suspicion. *Id.* at 427–28. Much like the color discrepancy in *Teamer*, the smell of marijuana here "is not 'inherently suspicious' or 'unusual' enough or so 'out of the ordinary' as to provide an officer with a reasonable suspicion of criminal activity." *See id.* There are various lawful explanations for why Baxter or his vehicle smelled like marijuana. As the *Teamer* court explained, "[t]he law allows officers to draw rational inferences, but to find reasonable suspicion based on this single noncriminal factor would be to license investigatory stops on nothing more than an officer's hunch." *Id.* at 428; *see also Kilburn v. State*, 297 So. 3d 671, 675 (Fla. 1st DCA 2020) ("A potentially lawful activity cannot be the sole basis for a detention. If this were allowed, the Fourth Amendment would be eviscerated.").

From his initial contact until Baxter was instructed to step out of the vehicle, Accra did not develop any indication that Baxter was unlawfully in possession of marijuana, which was the only crime Accra suspected. Notably, while Baxter was still in his vehicle, he asked no questions related to the smell or whether Baxter had a medical marijuana card. Accra also did not probe Baxter about the backpack or the fact that he moved it to the back seat. Instead, Accra's singular focus was on where Baxter was coming from and why he pulled into the parking lot. However, at no point did Baxter claim to be waiting for his friend to arrive at the parking lot, which is what Accra appeared to misunderstand. *See United States v. Perkins*, 348 F.3d 965, 971 (11th Cir. 2003) (requiring more than "innocuous characteristics of nervousness" and "a habit of repeating questions" to give rise to reasonable suspicion). In fact, Baxter maintained from the beginning of the encounter until he was detained that he was about to leave. Based on Accra's misunderstanding, he believed Baxter's story was "doodoo." It cannot be said that an objectively reasonable officer would have seen Baxter's story as inconsistent or contradictory. *See Teamer*, 151 So. 3d at 426 (instructing courts to look at the whole picture and from the perspective of an objectively reasonable officer); *see also Perkins*, 348 F.3d at 968, 971 (finding that officer lacked reasonable suspicion based on defendant's "behavior in response to his questions; and his hunch that [defendant] was being untruthful about his destination" where answers did not contradict in any way). Accordingly, Accra was acting on a "mere hunch" that Baxter was violating the law at the time of the detention. *See Wallace v. State*, 8 So. 3d 492, 494 (Fla. 5th DCA 2009) ("Although not precisely delineated, the minimal level of justification for an investigatory stop has been described as something more than a 'mere hunch.' A 'mere hunch' is simply a suspicion based on bare intuition." (citation omitted) (quoting *Arvizu*, 534 U.S. at 274)); *see also Delaware v. Prouse*, 440 U.S. 648, 662–63 (1979) ("Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed.").[6]

---

[6] It is also worth noting that even though Baxter was in a parked vehicle, the smell of marijuana alone would not be

As acknowledged by each of the opinions in this case, the changes to the law surrounding marijuana have been sweeping. Despite these changes, the Second District Court recently held that "regardless of whether the smell of marijuana is indistinguishable from that of hemp, the smell of marijuana emanating from a vehicle continues to provide probable cause for a warrantless search of the vehicle." *Owens*, 317 So. 3d at 1220.[7] Nevertheless, significant statutory revisions warrant both recognition and proper application by the courts. *See Crews v. State*, 183 So. 3d 329, 335 (Fla. 2015) ("When a statute is amended in some material way, courts presume that the legislature intended the amendment to have substantive effect."). Here, the only relevant factor leading to Accra's suspicion was the smell of fresh marijuana, therefore the constitutional question presented must be addressed.

Because the smell of marijuana alone cannot immediately be known to be contraband thereby constituting reasonable suspicion, and the totality of the circumstances here do not otherwise give

---

sufficient to begin a DUI investigation. *Cf. Santiago v. State*, 133 So. 3d 1159, 1166 (Fla. 4th DCA 2014) ("This court and others have required more than the odor of alcohol to establish reasonable suspicion for an investigatory stop.").

[7] Although I disagree with the stated holding in *Owens*, I agree with the court's analysis in finding probable cause under the totality of the circumstance. As the court explained:

> [T]he officer was responding to a complaint of reckless and erratic driving; and Owens' odd and erratic responses to the officer's attempts to communicate with him, coupled with the smell, caused the officer to reasonably conclude that Owens should not be "behind the wheel of a vehicle." Thus, the circumstances supported the officer's conclusion that he had probable cause to detain Owens and to search his vehicle.

*Id.* at 1219. None of these identified factors are present in this case.

rise to reasonable suspicion, I would reverse the judgment and sentence and certify conflict with the stated holding in *Owens*.